1
2
3
4
5
6
7

UNITED STATES  DISTRICT COURT

Northern District of California

10
11

| PACIFIC CENTURY INTERNATIONAL, LTD., | No. C 11-3823 MEJ |
| | **ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR LEAVE TO TAKE LIMITED EXPEDITED DISCOVERY** |
| Plaintiff, | |
| v. | |
| DOES 1-48, | |
| | **Docket No. 7** |
| Defendants. | |

## I.  INTRODUCTION

Plaintiff Pacific Century International, Ltd.. ("Plaintiff") has filed an ex parte Application pursuant to Federal Rules of Civil Procedure ("Rule") 26 and 45, requesting leave to take expedited discovery to determine the identity of the 48 Doe Defendants (collectively, "Defendants") named in this action.  Dkt. No. 7 ("Pl.'s App.").  For the reasons provided below, the Court **GRANTS** Plaintiff's Application.

## II.  BACKGROUND

On September 21, 2011, Plaintiff filed and Amended Complaint ("FAC" against 48 Doe Defendants, alleging that Defendants illegally reproduced and distributed a work subject to Plaintiff's exclusive license, ("*Amateur Creampies - Farrah (Part 2)*"), using an internet peer-to-peer file sharing network known as BitTorrent, and thereby violated the Copyright Act, 17 U.S.C. §§ 101-1322.  FAC ¶¶ 7, 24, 29, Dkt. No. 6.  Plaintiff asserts that because the alleged infringement

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

occurred on the internet, Defendants acted under the guise of their Internet Protocol ("IP") addresses rather than their real names. *Id.* at ¶ 8. As a result, Plaintiff contends that it could not determine Defendants' true identities without procuring the information from Defendants' respective Internet Service Providers ("ISPs"), which can link the IP addresses to a real individual or entity. *Id.* Consequently, Plaintiff has filed the present request that the Court grant it expedited discovery to issue subpoenas to the relevant ISPs so that the ISPs would produce the name, address, telephone number, and email address information attached to each IP address that Plaintiff had compiled through its own investigations. Pl.'s App. at 3.

### III. LEGAL STANDARD

Pursuant to Rule 26(d)(1), a court may authorize early discovery before the Rule 26(f) conference for the parties' convenience and in the interest of justice. Courts within the Ninth Circuit generally use a "good cause" standard to determine whether to permit such discovery. *See, e.g., Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2011 WL 1938154, at *1 (N.D. Cal. May 18, 2011); *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool*, 208 F.R.D. at 276. The court must perform this evaluation in light of "the entirety of the record . . . and [examine] the reasonableness of the request in light of all the surrounding circumstances." *Id.* at 275 (citation & quotation marks omitted). In determining whether there is good cause to allow expedited discovery to identify anonymous internet users named as doe defendants, courts consider whether: (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible. *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999).

UNITED STATES DISTRICT COURT
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.  DISCUSSION

**A.      Whether Plaintiff has Identified the Defendants with Sufficient Specificity**

Under the first factor, the Court must examine whether Plaintiff has identified the Defendants with sufficient specificity, demonstrating that each Defendant is a real person or entity who would be subject to jurisdiction in this Court.  *Id.* at 578.  Here, Plaintiff proffers that it retained Media Copyright Group, LLC ("MCG"), which utilized forensic software to identify Defendants' IP addresses on the date and time that they engaged in the alleged distribution of *Amateur Creampies - Farrah (Part 2)* via the BitTorrent protocol, and has compiled the information into a log attached as Exhibit A to Plaintiff's FAC.  Pl.'s App. at 7; FAC, Ex. A; Hansmeier Decl. ¶¶ 2, 15-21, Dkt. No. 7-1.  Plaintiff explains that Defendants gained access to the internet only by setting up an account through various ISPs, and that by providing the ISPs the information detailed in Exhibit A, the ISPs can look up the identity of the Defendants by reviewing their respective subscriber activity logs. Pl.'s App. at 7; Hansmeier Decl. ¶¶ 22, 27.  Additionally, Plaintiff indicates that it used geolocation technology to trace these IP addresses to a point of origin within the state of California.  FAC ¶ 3. Taken together, the Court finds that Plaintiff has come forward with sufficient information demonstrating that the Defendants are real persons or entities who may be subject to jurisdiction in this Court.  *See Pink Lotus Entm't. LLC v. Does 1-46*, 2011 WL 2470986, at *3 (N.D. Cal. June 21, 2011) (finding that the plaintiff met its burden to identify the Doe defendants with sufficient specificity by identifying the unique IP addresses of individuals engaged in P2P sharing and using geolocation technology to trace the IP addresses to a point of origin within the state of California); *MCGIP, LLC v. Does 1-149*, 2011 WL 3607666, at *2 (N.D. Cal. Aug. 15, 2011) (finding that the plaintiff had identified the Doe defendants with sufficient specificity by submitting a chart listing each of the defendants by the IP address assigned to them on the day it alleged the particular defendant engaged in the infringing conduct).

**B.      Whether Plaintiff has Identified All Previous Steps to Locate Defendants**

Under the second factor, the Court must assess the prior steps Plaintiff has taken to locate the Defendants.  *Columbia Ins. Co.*, 185 F.R.D. at 579.  "This element is aimed at ensuring that

UNITED STATES DISTRICT COURT
For the Northern District of California

1  plaintiffs make a good faith effort to comply with the requirements of service of process and

2  specifically identifying defendants." *Id.* Here, Plaintiff contends that it has exhausted all possible

3  means to find Defendants' names, addresses, phone numbers, and email addresses. Pl.'s App. at 7.

4  In support, Plaintiff cites to paragraphs 18 through 21 and 24 through 26 of Mr. Hansmeier's

5  Declaration. *Id.* Reviewing Mr. Hansmeier's testimony, he states that as a technician for MCG, he

6  used "proprietary peer-to-peer network forensic software to perform exhaustive real time monitoring

7  of the BitTorrent-based swarm involved in distributing the copyrighted file relevant to Plaintiff's

8  action." Hansmeier Decl. ¶ 16.

9       First, to locate swarms[1] where peers were distributing *Amateur Creampies - Farrah (Part 2)*,

10  MCG located torrent files on torrent indexing sites and internet file-sharing forums sharing the

11  names of Plaintiff's copyrighted works. *Id.* ¶¶ 18-19. To accomplish this, MCG utilized three

12  methods. According to Mr. Hansmeier, the most common means of locating the swarm is to connect

13  to a BitTorrent tracker, which is a server that contains an updated list of peers in the swarm. *Id.* ¶

14  19. A typical torrent file contains a list of multiple trackers associated with the underlying file. *Id.*

15  Other means of locating the swarm include using Distributed Hash Tables, which allow each peer to

16  serve as a "mini-tracker" and Peer Exchange, which allows peers to share data about other peers in

17  the swarm without the use of a tracker. *Id.*

18       After locating the swarm, MCG uses its software "to conduct an exhaustive real time

19  'fingerprint' of the swarm," which includes the date and time when a portion of *Amateur Creampies*

20  *- Farrah (Part 2)* was downloaded successfully to an infringer's computer, the time and date the

21  infringer was last successfully connected to the BitTorrent network, the IP address assigned to the

22  infringer's computer, the size of the file, the percent of the file downloaded, and the percent of the

23  _____

24  [1]P2P networks distribute infringing copies of copyrighted works with file sharing software
    such as BitTorrent when one user accesses the Internet through an ISP and intentionally makes a
25  digital file of a work available to the public from his or her computer. Hansmeier Decl. ¶¶ 8-11.
    This file is referred to as the first "seed." *Id.* ¶ 9. Other users, who are referred to as "peers," then
26  access the Internet and request the file. *Id.* ¶¶ 9, 11. These users engage each other in a group,
    referred to as a "swarm," and begin downloading the seed file. *Id.* As each peer receives portions
27  of the seed, that peer makes those portions available to other peers in the swarm. *Id.* ¶ 11.

28

4

1    file on the infringer's computer which is available at that moment for copying by other peers. *Id.* ¶

2    20. According to Mr. Hansmeier, "[a]fter recording granular level data about every peer in the

3    swarm, the next step is to carefully and thoroughly review the data produced by MCG's proprietary

4    forensic software to determine what peers were actually involved in illegally reproducing and

5    distributing Plaintiff's Video." *Id.* ¶ 25. Toward that end, he explains, "[w]hen a verified peer was

6    located who was [making] Plaintiff's copyrighted Video available for distribution and reproduction

7    via the BitTorrent protocol, I downloaded and retained both the torrent files and the actual digital

8    reproductions being offered for distribution to verify that the digital copies being distributed in the

9    swarm were in fact copies of the Plaintiff's copyrighted Video." *Id.* Particularly, Mr. Hansmeier

10   downloaded the file and compared it to an actual copy of *Amateur Creampies - Farrah (Part 2)* to

11   confirm that the file was a "substantially-similar reproduction of the copyrighted Video." *Id.* As

12   part of this process, MCG also traced each offending IP address to specific ISPs. *Id.* ¶¶ 22-24.

13   Based on Mr. Hansmeier's explanation of the foregoing steps as utilized to investigate

14   Defendants' activity with respect to *Amateur Creampies - Farrah (Part 2)* on the BitTorrent

15   protocol, the Court finds that Plaintiff has sufficiently described its efforts to identify Defendants.

16   **C.    Whether Plaintiff's Suit Against Defendants Could Withstand a Motion to Dismiss**

17   Under the third factor, the inquiry shifts to the substance of Plaintiff's claims and analyzes

18   whether Plaintiff's Complaint would likely survive a motion to dismiss. *Columbia Ins. Co.*, 185

19   F.R.D. at 579. In its Complaint, Plaintiff has asserted a federal copyright infringement claim and a

20   claim for civil conspiracy under California law.

21   To state a claim for copyright infringement, Plaintiff must establish: (1) ownership of a valid

22   copyright, and (2) copying of constituent elements of the copyrighted work that are original. *Rice v.*

23   *Fox Broad. Corp.*, 330 F.3d 1170, 1174 (9th Cir. 2003) (citing *Feist Publ'n, Inc. v. Rural Tel. Serv.*

24   *Co.*, 499 U.S. 340, 361 (1991)). "To be liable for direct infringement, one must 'actively engage in'

25   and 'directly cause' the copying." *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195,

26   1199 (N.D. Cal. 2004). Reviewing Plaintiff's Complaint, Plaintiff has adequately alleged that

27   *Amateur Creampies - Farrah (Part 2)* is the subject of a copyright registration application pending

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

1  in the United States Copyright Office and that Plaintiff is the exclusive rightsholder of the

2  distribution and reproduction rights of *Amateur Creampies - Farrah (Part 2)*. FAC ¶¶ 6, 25.

3  Plaintiff has also alleged that the Defendants reproduced and distributed *Amateur Creampies -*

4  *Farrah (Part 2)* via BitTorrent to numerous third parties via the same swarm. *Id.* ¶ 29.

5  Additionally, Plaintiff has alleged that Defendants actively engaged in or directly caused the

6  copying by completing each of the steps in the BitTorrent file-sharing protocol, including

7  intentionally downloading a torrent file particular to *Amateur Creampies - Farrah (Part 2)*, loading

8  that torrent file into the BitTorrent client, entering a BitTorrent swarm particular to *Amateur*

9  *Creampies - Farrah (Part 2)*, and ultimately, downloading and uploading pieces of a *Amateur*

10  *Creampies - Farrah (Part 2)* file to eventually obtain a whole copy of the file. FAC ¶¶ 17-19, 29.

11  Based on these allegations, the Court finds that Plaintiff has pled a *prima facie* case of copyright

12  infringement and set forth sufficient supporting facts to survive a motion to dismiss.

13  Plaintiff has also asserted a claim for civil conspiracy pursuant to California law. Whether

14  this claim would survive a motion to dismiss, however, presents a closer question. At least one

15  other court in this District has recognized that a civil conspiracy claim does not provide a

16  substantive basis for liability under California law, but is merely a mechanism for imposing

17  vicarious liability. *Millennium TGA, Inc. v. Does 1-21*, 2011 WL 1812786, at *2 (N.D. Cal. May 12,

18  2011). As the *Millennium* court noted, "[w]hile the Ninth Circuit has not addressed the subject,

19  other district courts have held that state law civil conspiracy claims based on copyright infringement

20  are preempted." *Id*. Thus, there is some doubt as to the viability of Plaintiff's civil conspiracy

21  claim. Nevertheless, because Plaintiff has sufficient pled a copyright infringement claim – which is

22  enough to satisfy the third factor – the Court need not determine the fate of Plaintiff's civil

23  conspiracy claim at this juncture.

24  **D.  Whether there is a Reasonable Likelihood of Being Able to Identify Defendants**

25  The fourth factor examines whether Plaintiff has demonstrated that there is a reasonable

26  likelihood that the discovery it requests will lead to the identification of Defendants such that it may

27  effect service of process. *Columbia Ins. Co.*, 185 F.R.D. at 580. As indicated above, Plaintiff

28

1  contends that the key to locating Defendants is through the IP addresses associated with the alleged

2  activity on BitTorrent. Specifically, Plaintiff contends that because ISPs assign a unique IP address

3  to each subscriber and retain subscriber activity records regarding the IP addresses assigned, the

4  information sought in the subpoena will enable Plaintiff to serve Defendants and proceed with this

5  case. Hansmeier Decl. ¶¶ 22-23; Gibbs Decl. ¶ 4, Dkt. No. 7-2. Taking this into account, the Court

6  finds that Plaintiff has made a sufficient showing as to this factor.

7  **E.      Summary**

8          Taking the foregoing factors into consideration, the Court finds that Plaintiff has

9  demonstrated that good cause exists to grant it leave to conduct early discovery. Moreover, the

10  Court finds that the expedited discovery sought furthers the interests of justice and presents minimal

11  inconvenience to the ISPs to which the subpoenas are directed. Thus, the expedited discovery is in

12  line with Rule 26(d).

13  **F.      Joinder of 48 Defendants**

14          Having found that expedited discovery is appropriate, the question becomes whether the

15  discovery sought is proper as to all 48 Defendants. Under Rule 20, defendants may be joined in one

16  action when claims arise from the same transaction or occurrence or series of transactions or

17  occurrences, and any question of law or fact in the action is common to all defendants. Fed. R. Civ.

18  P. 20(a)(2). The permissive joinder rule "is to be construed liberally in order to promote trial

19  convenience and to expedite the final determination of disputes, thereby preventing multiple

20  lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir.

21  1997). The purpose of Rule 20(a) is to address the "broadest possible scope of action consistent

22  with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United*

23  *Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Rule 20(a) imposes two specific

24  requisites to the joinder of parties: (1) a right to relief must be asserted by, or against, each plaintiff

25  or defendant relating to or arising out of the same transaction or occurrence, and (2) some question

26  of law or fact common to all the parties must arise in the action. Fed. R. Civ. P. 20(a). Both of these

27  requirements must be satisfied in order to justify party joinder under Rule 20(a). *Id.* In situations of

28

UNITED STATES DISTRICT COURT
For the Northern District of California

7

1  misjoinder of parties, Rule 21 provides that "[o]n motion or on its own, the court may at any time,

2  on just terms, add or drop a party."

3          1.        Same Transaction, Occurrence, or Series of Transactions or Occurrences

4          "The Ninth Circuit has interpreted the phrase 'same transaction, occurrence, or series of

5  transactions or occurrences' to require a degree of factual commonality underlying the claims."

6  *Bravado Int'l Group Merch. Servs. v. Cha*, 2010 WL 2650432, at *4 (C.D. Cal. June 30, 2010)

7  (citing *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)). Typically, this means that a party

8  "must assert rights . . . that arise from related activities-a transaction or an occurrence or a series

9  thereof." *Id.* (citation omitted). Recently, courts in this District – as well as several other federal

10  districts – have come to varying decisions about the proprietary of joining multiple defendants in

11  BitTorrent infringement cases. *See MCGIP*, 2011 WL 3607666, at 3 (listing a sample of recent

12  decisions). This Court has carefully reviewed such decisions and notes that they are highly

13  dependent on the information the plaintiff presented regarding the nature of the BitTorrent file-

14  sharing protocol and the specificity of the allegations regarding the Doe defendants' alleged

15  infringement of the protected work. Both of these factors guide the Court's joinder analysis in this

16  matter as well.

17          Reviewing Plaintiff's Application and supporting materials, Plaintiff has provided a fairly

18  detailed explanation about how the BitTorrent protocol operates. *See* Hansmeier Decl. ¶¶ 8-13. Mr.

19  Hansmeier explains:

20                The sharing of a file via the BitTorrent protocol operates as follows.
                First, the initial seeder creates a small "torrent" file that contains
21                instructions for how to find the seed. The seeder uploads the torrent
                file to one or more of the many torrent indexing sites. As Internet users
22                come across the torrent file, they intentionally elect to load the torrent
                files in their BitTorrent client, which uses the instructions contained in
23                the torrent file to locate the seed. These users now are peers in the
                swarm with respect to that digital reproduction. The BitTorrent
24                protocol dictates that each peer download a random portion of the file
                (a "piece") from the seed. After a peer has downloaded its first piece,
25                it then shares that piece and subsequent pieces with other peers in the
                swarm. The effect of this protocol is that each peer is both copying and
26                distributing copyrighted material at the same time. That is, each peer
                in a BitTorrent network has acted and acts in cooperation with other
27                peers by agreeing to provide, and actually providing, an infringing
                reproduction of at least a substantial portion of a copyrighted work in

28

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1
2

> anticipation of the other peers doing likewise. Joining a BitTorrent network is an intentional act, requiring the selection by a peer of multiple links to do so.

3   *Id.* ¶ 11.

4          The Court finds that Plaintiff has also provided enough specificity to make a preliminary

5   determination that the 48 Doe Defendants here were part of the same swarm.  Reviewing Exhibit A

6   to Plaintiff's FAC, Defendants' alleged infringing activity occurred from May 25, 2011 through

7   June 30, 2011.  FAC, Ex. A.  While this period might seem protracted, such time periods can be

8   somewhat arbitrary in BitTorrent-based cases as long as the alleged defendants participate in the

9   same swarm, downloading and uploading the same file.  With respect to the particular swarm at

10  issue here, the hash (an alphanumeric representation of a digital file) associated with the copied

11  file's torrent file remained the same within the swarm.  FAC ¶ 7.  Further, the alleged infringers all

12  participated in the same exact swarm and downloaded the same exact copyrighted file.  Hansmeier

13  Decl. ¶ 26.  And, even after a Doe Defendant disconnects from the swarm, the parts of the file that

14  he downloaded and uploaded will continue to be transferred to other Doe Defendants remaining in

15  the swarm.  *Id.* ¶ 12.

16         Based on these allegations, Plaintiff's claims against Defendants appear logically related.

17  Each putative Defendant is a possible source for Plaintiff's copyrighted work, and may be

18  responsible for distributing the work to the other putative Defendants, who are also using the same

19  file-sharing protocol to copy the identical copyrighted material.  *See Disparte v. Corporate Exec.*

20  *Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004) (to satisfy Rule 20(a)(2)(A) claims must be "logically related"

21  and this test is "flexible.").  While the Doe Defendants may be able to rebut these allegations later,

22  Plaintiff has sufficiently alleged that its claims against Defendants potentially stem from the same

23  transaction or occurrence, and are logically related.  *See Arista Records LLC v. Does 1–19*, 551 F.

24  Supp. 2d 1, 11 (D.D.C. 2008) ("While the Court notes that the remedy for improper joinder is

25  severance and not dismissal, . . . the Court also finds that this inquiry is premature without first

26  knowing Defendants' identities and the actual facts and circumstances associated with Defendants'

27  conduct.").  Plaintiff has made a preliminary showing that these Defendants were present in the

28

9

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    same *Amateur Creampies - Farrah (Part 2)* swarm on BitTorrent and shared pieces of the same seed

2    file containing *Amateur Creampies - Farrah (Part 2).*

3              2.    <u>Question of Law or Fact Common to All Defendants</u>

4              Rule 20(a)(2)(B) requires Plaintiff's claims against the putative Doe Defendants to contain a

5    common question of law or fact.  Here, Plaintiff will have to establish the same legal claims

6    concerning the validity of the copyright in *Amateur Creampies - Farrah (Part 2)* and the

7    infringement of the exclusive rights reserved to Plaintiff as copyright holder.  Furthermore, Plaintiff

8    alleges that Defendants utilized the same BitTorrent file-sharing protocol to illegally distribute and

9    download *Amateur Creampies - Farrah (Part 2)* and, consequently, factual issues related to how

10   BitTorrent works and the methods used by Plaintiff to investigate, uncover, and collect evidence

11   about the infringing activity will be essentially identical for each Defendant.  *See Call of the Wild*

12   *Movie, LLC v. Does 1-1062*, 770 F. Supp. 2d 332, 343 (D.D.C. 2011).  The Court recognizes that

13   each putative defendant may later present different factual and substantive legal defenses, "but that

14   does not defeat, at this stage of the proceedings, the commonality in facts and legal claims that

15   support joinder under Rule 20(a)(2)(B)."  *Id.*

16             3.    <u>Prejudice to Any Party or Needless Delay</u>

17             Finally, the Court must assess whether joinder would prejudice the parties or result in

18   needless delay.  Joinder in a single case of putative defendants who allegedly infringed the same

19   copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative

20   defendants.  *Id.* at 344; *London–Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 (D. Mass.

21   2008) (court consolidated separate Doe lawsuits for copyright infringement since the "cases involve

22   similar, even virtually identical, issues of law and fact: the alleged use of peer-to-peer software to

23   share copyrighted sound recordings and the discovery of defendants' identities through the use of a

24   Rule 45 subpoena to their internet service provider. Consolidating the cases ensures administrative

25   efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if

26   any, that other John Does have raised.").

27             Here, Plaintiff seeks to obtain identifying information from ISPs so that it can properly name

28

10

UNITED STATES DISTRICT COURT
For the Northern District of California

1  and serve Defendants.  If the Court were to consider severance at this juncture, Plaintiff would face

2  significant obstacles in its efforts to protect its copyright from illegal file-sharers, and this would

3  only needlessly delay the case.  Plaintiff would be forced to file 48 separate lawsuits, in which it

4  would then move to issue separate subpoenas to ISPs for each defendant's identifying information.

5  Plaintiff would additionally be forced to pay the Court separate filing fees in each of these cases,

6  which would further limit its ability to protect its legal rights.  "This would certainly not be in the

7  'interests of convenience and judicial economy,' or 'secure a just, speedy, and inexpensive

8  determination of the action.'"  *Call of the Wild*, 770 F. Supp. 2d at 334 (citation omitted) (declining

9  to sever defendants where parties joined promotes more efficient case management and discovery

10  and no party prejudiced by joinder).

11        Further, Defendants are currently identified only by their IP addresses and are not named

12  parties.  Consequently, they are not required to respond to Plaintiff's allegations or assert a defense.

13  Defendants may be able to demonstrate prejudice once Plaintiff proceeds with its case against them,

14  but they cannot demonstrate any harm that is occurring to them before that time.  *Id.*

15        Thus, the Court finds that, at this preliminary stage, Plaintiff has met the requirements of

16  permissive joinder under Rule 20(a)(2).  The putative defendants are not prejudiced but likely

17  benefitted by joinder, and severance would debilitate Plaintiff's efforts to protect its copyrighted

18  material and seek redress from Defendants, who have allegedly engaged in infringing activity.  To

19  be fair, the Court recognizes that the questions of joinder and severance must be deferred until after

20  discovery has been authorized and any motions to quash filed.  The Court is also cognizant of the

21  logistical and administrative challenges of managing a case with numerous putative defendants, a

22  number of whom may seek to file papers pro se.  However, severing the putative defendants at this

23  early stage is no solution to ease the administrative burden of the cases.  The Court therefore

24  declines to sever the Doe Defendants at this time.

25  **V.   CONCLUSION**

26        For the reasons stated above, the Court **GRANTS** Plaintiff's Ex Parte Application for

27  Expedited Discovery (Dkt. No. 7) as follows:

28

11

UNITED STATES DISTRICT COURT
For the Northern District of California

1    IT IS HEREBY ORDERED that Plaintiff is allowed to serve immediate discovery on Does 1-48's ISPs listed in Exhibit A to the Amended Complaint by serving a Rule 45 subpoena that seeks information sufficient to identify the Doe Defendants, including the name, address, telephone number, and email address of Does 1-48.  Plaintiff's counsel shall issue the subpoena and attach a copy of this Order.

2.   IT IS FURTHER ORDERED that each ISP will have 30 days from the date of service upon it to serve Does 1-48 with a copy of the subpoena and a copy of this Order.  The ISPs may serve the Doe Defendants using any reasonable means, including written notice sent to his or her last known address, transmitted either by first-class mail or via overnight service.

3.   IT IS FURTHER ORDERED that Does 1-48 shall have 30 days from the date of service upon him, her, or it to file any motions in this Court contesting the subpoena (including a motion to quash or modify the subpoena).  If that 30-day period lapses without Does 1-48 contesting the subpoena, the ISP shall have 10 days to produce the information responsive to the subpoena to Plaintiff.

4.   IT IS FURTHER ORDERED that, because no appearance by a person at a deposition is required by the subpoena, instead only production of documents, records and the like is required, the witness and mileage fees required by Rule 45(b)(1) of the Federal Rules of Civil Procedure do not apply and no such fees need be tendered.  Any ISP that receives a subpoena pursuant to this Order shall confer with Plaintiff and shall not assess any charge in advance of providing the information requested in the subpoena.  The ISP that receives a subpoena and elects to charge for the costs of production shall provide a billing summary and cost reports that serve as a basis for such billing summary and any costs claimed by the ISP.

5.   IT IS FURTHER ORDERED that the subpoenaed entity shall preserve all subpoenaed information pending the ISP's delivering such information to Plaintiff or the final resolution of a timely filed and granted motion to quash the subpoena with respect to such information.

6.   IT IS FURTHER ORDERED that any information disclosed to Plaintiff in response to a subpoena may be used by Plaintiff solely for the purpose of protecting its rights under the Copyright

12

1   Act, 17 U.S.C. §§ 101-1322.

2       7.  IT IS FURTHER ORDERED that Plaintiff shall serve each Doe Defendant with the

3   summons, complaint, and other documents required by Civil Local Rule 4-2 within 120 days of

4   learning that Doe's identity.

5       8.  IT IS FURTHER ORDERED that should Plaintiff engage in settlement negotiations with

6   any Doe Defendant, it shall not assert that that Doe is being sued in San Francisco, unless Plaintiff

7   believes that Doe to be a resident of this District or has a good faith belief, consistent with Federal

8   Rule of Civil Procedure 11(b), that it can otherwise establish personal jurisdiction over that Doe in

9   this District.

10      9.  IT IS FURTHER ORDERED that subpoenas authorized by this Order and issued pursuant

11  thereto shall be deemed appropriate court orders under 47 U.S.C. § 551.  In particular, 47 U.S.C. §

12  551(c)(2)(B) provides as follows:

13  (c) Disclosure of personally identifiable information

14          ***

15          (2) A cable operator may disclose such information if the disclosure is . . .

16          ***

17          (B) subject to subsection (h) [relating to disclosures to governmental
            agencies] of this section, made pursuant to a court order authorizing such
18          disclosure, if the subscriber is notified of such order by the person to whom
            the order is directed.
19

20  This Order is an order authorizing such disclosure.

21      **IT IS SO ORDERED.**

22

23  Dated: October 7, 2011                                    _____

24                                                            Maria-Elena James
                                                              Chief United States Magistrate Judge
25

26

27

28

                                        13

**UNITED STATES DISTRICT COURT**
For the Northern District of California